UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MICHAEL RAGLAND,

                          Plaintiff,

        -against-

CITY OF NEW YORK, BRIAN WILKENS and
JOHN or JANE DOES 1-10,

                        Defendants.
--------------------------------------------------------------X

        **COMPLAINT**

        **Demand for Trial by Jury**

        Plaintiff, MICHAEL RAGLAND, by and through the undersigned attorneys, Sim & DePaola, LLP, for his complaint against the Defendants, City of New York, Brian Wilkens and John or Jane Does 1-10, alleges and states as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action, in which Plaintiff seeks relief vis-à-vis 42 U.S.C. §§ 1981, 1983 and 1988 for the violation of his civil rights protected by the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, as well as the laws and constitution of the State of New York.

2.      The following claims arise from an April 15, 2019 incident, in which defendants, acting under color of state law, unlawfully stopped, arrested and detained plaintiff without a valid judicially authorized arrest warrant, reasonable suspicion, probable cause or any other legal justification to do so. Mr. Ragland was subsequently charged with one count of New York Penal Law § 165.30(1), Fraudulent Accosting.

3.      As a result, plaintiff was illegally detained for numerous hours and was thereafter subjected to a malicious prosecution, until District Attorney's Office declined to proceed any further with the unfounded criminal prosecution against plaintiff.

4.      The above referenced acts caused Mr. Ragland to be deprived of his liberty, denied his rights to due process and the equal protection of the laws and to sustain various emotional and physical injuries.

5.      Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, an award of costs and attorneys' fees, and such other and further relief as the Court may deem just and proper.

## JURISDICTION

6.      This action arises under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. §§ 1981, 1983 and 1988 and by virtue of the laws and constitution of the State of New York.

7.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

8.      Venue is laid within the Southern District of New York, in that Defendant City of New York is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

9.      Plaintiff, Michael Ragland ("Mr. Ragland"), is a black male citizen of the United States, who resides in Bronx County, within the City and State of New York.

10.     The Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

11.     At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives, and supervisory officers as well as the individually named Defendants herein.

12.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

13.     Defendant, Brian Wilkens, was, at all relevant times herein, a police officer or detective employed by the NYPD and, as such, was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Wilkens was, at all relevant times herein, believed to be assigned to the NYPD's Midtown South Precinct. Defendant Brian Wilkens is being sued in his individual and official capacities.

14.     At all relevant times, Defendants, John or Jane Doe 1-10, were police officers, detectives, supervisors, policymakers or officials employed by the NYPD. At this time, Plaintiff is not privy to the true identities of defendants, John or Jane Doe 1-10, as such knowledge is within the exclusive dominion of defendants.

15.     At all relevant times herein, Defendants, John or Jane Does 1-10, were acting as agents, servants and employees of the City of New York, the NYPD. Defendants, John or Jane Does 1-10, are being sued in their individual and official capacities.

16.     At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

17.     Within ninety-days of the injuries alleged herein, plaintiff served notice of his claims, upon the City of New York.

18.     Over thirty-days have elapsed, since said service, and plaintiff's claims have not been settled or otherwise disposed of.

19.     Plaintiff has complied with municipal defendant's demand for an oral examination, pursuant to Section 50-H of the New York General Municipal Law or no such demand was timely interposed.

20.     The New York State claims have been commenced within one-year-and-ninety-days from their respective accrual dates.

## **FACTUAL CHARGES**

21.     On April 15, 2019, at approximately 4:00 p.m., Mr. Ragland was walking on the sidewalk in the vicinity of 412 8th Avenue, New York, New York.

22.     Mr. Ragland had not committed any crimes or violations of the law, and had not been accused of such.

23.     As Mr. Ragland was walking, he was approached by an elderly white couple, who requested that plaintiff provide them with travel directions.

24.      Plaintiff politely obliged by providing the couple with directions to their intended destination.

25.     During or immediately after plaintiff's interactions with the couple, he was illegally approached and stopped Defendants, including Brian Wilkens, who grabbed plaintiff's body and arms to prevent him from moving.

26.     Defendants, including, Brian Wilkens, then proceeded to illegally search Mr. Ragland's person, despite the clear lack of any indicia of secreted contraband or unlawful activity.

27.     Defendants, including Brian Wilkens, then violently contorted Mr. Ragland's arms behind his back and proceeded to affix metal handcuffs to his wrists in an excessively tight fashion, which caused him to suffer substantial injury, pain and discomfort.

28.     Mr. Ragland was thereafter physically removed against his will to the NYPD's Midtown South Precinct, where he was subjected to various indignities, including thorough bodily searches, fingerprinting, retina scans and compelled confinement in a cramped precinct cell.

29.     Plaintiff was eventually released several hours later, upon being issued a Desk Appearance Ticket by defendant Wilkens, which required him to appear in court to contest the false charges against him.

30.     Defendants, including, Brian Wilkens, knowingly and intentionally gave false, fabricated, misleading, or incomplete information to the District Attorney's Office, namely that he was guilty of fraudulent accosting, so that a criminal prosecution would be initiated against Mr. Ragland.

31.     Mr. Ragland asserts that Defendants, including Brian Wilkens, arrested and detained him with the full knowledge that he had committed no crimes or violations of the law.

32.     Mr. Ragland, therefore, asserts that due to the clear absence of any viable probable cause to warrant his criminal prosecution, at any point, he was denied his right to fair trial and maliciously prosecuted from the moment he was issued the desk appearance ticket, until the

favorable termination of the criminal charges against him on June 14, 2019, when the District

Attorney declined to further the criminal proceeding initiated by defendants, including Wilkens,

against plaintiff.

33.     At all times relevant hereto, the Defendants, including, Brian Wilkens, were involved in

the decision to arrest Plaintiff without probable cause, or failed to intervene when they observed

others arresting Plaintiff without probable cause.

34.     Defendant City has engaged in a policy, custom, or pattern and practice of stopping

vehicles driven by ethnic minorities without probable cause or reasonable suspicion to do so,

35.     Defendant City has also engaged in a policy, custom, or pattern and practice of illegally

stopping, searching and arresting black males, who are observed interacting with white

individuals, due solely to their impermissible and uncorroborated belief that such interaction can

only be criminal in nature

36.     Mr. Ragland asserts that the aforementioned unlawful acts committed by defendants are

representative of a pervasive policy, custom or pattern and practice within the City of New York

and the NYPD in particular.

37.     Mr. Ragland asserts that Defendants, including Brian Wilkens, illegally approached,

stopped, searched, and then falsely arrested him, due solely to their racially discriminatory

prejudices against black male individuals, their desire to fulfill an unconstitutional arrest quota

and to benefit from increased overtime compensation.

38.     Mr. Ragland further asserts that Defendants, including Brian Wilkens, acted in such an

unlawfully reprehensible manner, due to their unsubstantiated and unreasonable presumption that

plaintiff's innocuous interaction with white individuals was criminal in nature, solely because of

Mr. Ragland's status as a black male.

39.     Defendants, including Brian Wilkens, arrested and maliciously prosecuted Plaintiff, because of their racially discriminatory beliefs, which compelled defendants to interpret a kind and thoughtful act as a dastardly criminal deed.

40.     Defendants, including Brian Wilkens, perpetrated multiple overt acts in furtherance of their obviously discriminatory inclinations, namely the stop, searches, assaults, batteries, seizure, arrest, and malicious prosecution against plaintiff, even after they were unable to discover any evidence to justify such conduct.

41.     Defendants, including Brian Wilkens, unlawfully stopped, questioned, searched, seized, arrested, and maliciously prosecuted plaintiff, due solely to defendants' perception or consideration of Plaintiff's race.

42.     Defendants, including Brian Wilkens, possessed no valid reason to approach, stop, question, search or arrest plaintiff, which gives rise to the strong inference that such conduct resulted from defendants' unjust motivations or proclivities.

43.     Defendants, including Brian Wilkens subjected plaintiff to disparate treatment compared to other individuals similarly situated, because defendants did not stop and accuse any white pedestrians, who had engaged in activity identical to the kind that resulted in plaintiff's illegal search and seizure, namely the offering of assistance in response to a request from white individuals in the vicinity of 412 8th Avenue.

44.     Plaintiff asserts that the defendants, including Brian Wilkens, who violated plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the ranks of the NYPD and the City of New York that such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that

the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may be subjected to it by virtue of coming into contact with their police officers.

45.     Defendant Wilkens, as well as many other officers serving in the employ of the NYPD, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, without incurring any punishment or penalty for such misconduct and, ostensibly, with the full and complete blessing of the NYPD and its respective policymakers and supervisors.

46.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Attached hereto, as Exhibit A, and incorporated by reference herein, are various articles and reports detailing the magnitude and overwhelming prevalence of incidents, in which NYPD officers were caught lying, including instances that resulted in the arrest and imprisonment of innocent people. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via some incontrovertible form of evidence.

47.     On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting

the fact that the substantiation of a claim against an officer will invariably rely on the presence of

incontrovertible proof against the officer. Due to the rarity availability of this type of evidence,

an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is

further handicapped by a terribly designed system that requires evidence of a virtually

indisputable nature to substantiate any claim against an officer. The article also details the

NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that

this reluctance is a significant cause of the lying pandemic within the NYPD. The article

references various officers and detectives who were the subject of credible accusations relating

to the officers' intentionally false statements, with some allegations coming from federal and

state judges.

48.     On September 12, 2019, *The New York Times* published another article by Joseph

Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars."

Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of

marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana.

It should not require an article in *The New York Times* to call attention to such patently

disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's

failure to correct such behavior, the willingness of prosecutors and judges to credit the lying

officers and the increasing rate of occurrence.

49.     On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies

Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD

Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at

least three innocent people. The article described how Det. Franco lied about observing drug

transactions on at least three separate occasions, lies that were only uncovered through

contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

50. Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

51. The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

52. Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies,

customs, or patterns and practices within the NYPD that resulted in plaintiff's arrest without probable cause.

53.     Upon information and belief, the NYPD and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

54.     Defendants' actions, pursuant to plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD.

55.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD and its respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession and control of defendants and the NYPD.

56.     Upon information and belief, the personnel files, records and disciplinary histories of the officer defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of defendants committing similar violations in the future was extremely high.

57.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the NYPD was fully aware of defendant Wilken's past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from his hiring or retention, as well as his unsuitability for employment as a law enforcement officer, or for employment in general, and that the NYPD failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the tacit approval of such misconduct or indicative of the City's deliberate indifference towards protecting the civil rights of those who may interact with its employees, including Brian Wilkens.

58.     Upon information and belief, the NYPD and City of New York and have failed, or outright refused, to correct its police officers' tendencies to engage in conduct constitutionally repugnant conduct.

59.     The aforementioned acts of defendants, including the City and Brian Wilkens, directly or proximately resulted in the deprivation or violation of plaintiff's civil rights enumerated within Fourth, Sixth and Fourteenth Amendments to the United States Constitution, as well as the laws and constitution of the State of New York.

60.     As direct or proximate results of said acts, plaintiff was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and anxiety.

## FIRST CAUSE OF ACTION
Unlawful Search and Seizure Under
New York State Law

61.     The above paragraphs are here incorporated by reference as though fully set forth.

62.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

63.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

64.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

65.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

66.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to Section 8 of the New York State Civil Rights Law and Article I, Section 12, of the New York State Constitution.

67.     Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

68.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Unlawful Search and Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

69.     The above paragraphs are here incorporated by reference as though fully set forth.

70.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

71.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

72.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

73.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

74.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution.

75.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
False Arrest and False Imprisonment Under
New York State Law

76.     The above paragraphs are here incorporated by reference as though fully set forth.

77.     Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

78.     Plaintiff was conscious of his confinement.

79.     Plaintiff did not consent to his confinement.

80.     Plaintiff's arrest and false imprisonment was not otherwise privileged.

81.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

82.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

83.     The above paragraphs are here incorporated by reference as though fully set forth.

84.     The Defendants violated the Fourth and Fourteenth Amendments to the United States

Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

85.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and

imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent,

and without probable cause or reasonable suspicion.

86.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and

imprisoning Plaintiff.

87.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## FIFITH CAUSE OF ACTION
Assault and Battery Under
New York State Law

88.     The above paragraphs are here incorporated by reference as though fully set forth.

89.     Defendants made plaintiff fear for his physical well-being and safety and placed him in

apprehension of immediate harmful or offensive touching.

90.     Defendants engaged in and subjected plaintiff to immediate harmful or offensive

touching and battered him without his consent.

91.     Defendant City, as employer of the individual Defendants, is responsible for their

wrongdoing under the doctrine of *respondeat superior*.

92.     As a direct and proximate result of this breach, Plaintiff sustained the damages

hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

93.     The above paragraphs are here incorporated by reference as though fully set forth.

94.     The Defendants violated Plaintiff's rights, under the Fourth and Fourteenth Amendments,
because they used unreasonable force without Plaintiff's consent.

95.     Defendants engaged in and subjected Plaintiff to immediate harmful or offensive
touching and battered him without his consent.

96.     As a direct and proximate result of this breach, Plaintiff sustained the damages
hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

97.     The above paragraphs are here incorporated by reference as though fully set forth.

98.     Defendants initiated the prosecution against Plaintiff.

99.     Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution
would succeed.

100.    Defendants acted with malice, which may be inferred in the absence of probable cause.

101.    The prosecution was terminated in Plaintiff's favor, when the District Attorney declined
to continue the criminal prosecution.

102.    Defendant City, as employer of the individual Defendants, is responsible for their
wrongdoing under the doctrine of *respondeat superior*.

103.    As a direct and proximate result of this breach, Plaintiff sustained the damages
hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

104.    The above paragraphs are here incorporated by reference as though fully set forth.

105.    Defendants initiated the prosecution against Plaintiff.

106.    Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution

would succeed.

107.    Defendants acted with malice, which may be inferred in the absence of probable cause.

108.    The prosecution was terminated in Plaintiff's favor, when the District Attorney declined

to continue the criminal prosecution against plaintiff.

109.    Accordingly, Defendants violated Plaintiff's Fourteenth Amendment rights.

110.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## NINTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

111.    The above paragraphs are here incorporated by reference as though fully set forth.

112.    Defendants arrested, detained and caused a criminal prosecution to be initiated against

plaintiff to compel the compliance or forbearance of some act.

113.    Defendants had no excuse or justification to forcibly detain or initiate a prosecution

against Plaintiff, especially with the absence of any cognizable probable cause.

114.    Defendants intended to inflict substantial harm upon plaintiff.

115.    Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's

criminal prosecution.

116.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

117.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

118.    The above paragraphs are here incorporated by reference as though fully set forth.

119.    Defendants arrested, detained and caused a criminal prosecution to be initiated against plaintiff to compel the compliance or forbearance of some act.

120.    Defendants had no excuse or justification to forcibly detain and initiate a prosecution against plaintiff, especially with the absence of any cognizable probable cause.

121.    Defendants intended to inflict substantial harm upon plaintiff.

122.    Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's criminal prosecution.

123.    Defendants' actions therefore resulted in deprivations to plaintiff's rights, pursuant to the Fourth and Fourteenth Amendments.

124.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
New York State Law

125.    The above paragraphs are here incorporated by reference as though fully set forth herein.

126.    Defendants fabricated false evidence to be used against plaintiff that was likely to influence a jury's decision.

127.    Defendants forwarded said false information to the District Attorney's Office.

128.    Defendants' actions resulted in post-arraignment deprivation to plaintiff's liberty and freedom of movement.

129.    Accordingly, defendants violated plaintiff's right to a fair trial, pursuant to Article I, Sections 1, 2 & 6, of the New York State constitution, in addition to Article II, Section 12, of the New York State Civil Rights Law.

130.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

131.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## **TWELFTH CAUSE OF ACTION**
### Denial of Right to Fair Trial Under
### 42 U.S.C. § 1983 Against Individual Defendants

132.    The above paragraphs are here incorporated by reference as though fully set forth.

133.    Defendants fabricated false evidence to be used against plaintiff that was likely to influence a jury's decision.

134.    Defendants forwarded said false information to prosecutors.

135.    Defendants' actions resulted in post-arraignment deprivations to plaintiff's liberty and freedom of movement.

136.    Accordingly, defendants violated Plaintiff's rights, pursuant to the Fifth, Sixth and Fourteenth Amendments to United States Constitution

137.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
New York State law

138.    The above paragraphs are here incorporated by reference as though fully set forth herein.

139.    Plaintiff, as a black male, is a member of a racial minority and protected class.

140.    Defendants discriminated against Plaintiff on the basis of his race, color or ethnicity.

141.    Defendants engaged in the selective of Plaintiff, in comparison to others similarly situated.

142.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such

as race, color, ethnicity, an intent to inhibit or punish Plaintiff's exertion of his Constitutional rights,

or a malicious or bad faith intent to injure Plaintiff.

143.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

144.    Defendants, motivated by discriminatory animus, employed the use of facially neutral

statutes with adverse effects against Plaintiff.

145.    Defendants did not possess a rational basis, excuse or justification for applying any laws or

statutes against Plaintiff.

146.    Defendant City, as employer of the individual Defendants, is responsible for their

wrongdoing under the doctrine of *respondeat superior*.

147.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 and 1983 Against Individual Defendants

148.    The above paragraphs are here incorporated by reference as though fully set forth herein.

149.    Plaintiff, as a black male, is a member of a racial minority and protected class.

150.    Defendants discriminated against Plaintiff on the basis of his race, color or ethnicity

151.    Defendants selectively treated Plaintiff in comparison to others similarly situated.

152.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or malicious or bad faith intent to injure Plaintiff.

153.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner that resulted in adverse consequences.

154.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

155.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

156.    Accordingly, defendants acted to deprive plaintiff of his rights without due process and deny him the equal protection of the laws, in violation of the Fourteenth Amendment.

157.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

158.    The above paragraphs are here incorporated by reference as though fully set forth herein.

159.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

160.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

161.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

**SIXTEENTHCAUSE OF ACTION**
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

162.    The above paragraphs are here incorporated by reference as though fully set forth herein.

163.    Those Defendants that were present but did not actively participate in the aforementioned

unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty

to intervene and prevent such conduct, and failed to intervene.

164.    Accordingly, the Defendants who failed to intervene violated the Fourth, Fifth, Sixth and

Fourteenth Amendments.

165.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

**SEVENTEENTH CAUSE OF ACTION**
Negligent Hiring, Training, Retention and Supervision Under
New York State Law

166.    The above paragraphs are here incorporated by reference as though fully set forth.

167.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and

supervise its employee defendants.

168.    Defendant City breached those duties of care.

169.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

170.    Defendant City knew or should have known of its employee defendants' propensity for

violating the individual rights granted under the United States Constitution and the laws of the

State of New York, prior to the injuries incurred by Plaintiff.

171.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

172.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTEENTH CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

173.    The above paragraphs are here incorporated by reference as though fully set forth.

174.    Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

175.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

176.    Defendant City and its policymakers failed to provide adequate training or supervision to their subordinates to such an extent that is tantamount to a deliberate indifference toward the rights of those who may come into contact with defendant City's employees.

177.    Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

178.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

179.    Defendant City's conduct caused the violation of plaintiff's civil rights, pursuant to Constitution of the United States.

180.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)    Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)    Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)    Awarding Plaintiff reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and the New York State Civil Rights Law;

**e)**    Granting such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: May 7, 2020

                                        Respectfully submitted,


                                        /s/ Samuel C. DePaola
                                        Samuel C. DePaola, Esq.
                                        Bar Number: SD0622
                                        Sim & DePaola, LLP
                                        *Attorneys for Mr. Ragland*
                                        4240 Bell Blvd - Ste 201
                                        Bayside, NY 11361
                                        T: (718) 281-0400
                                        F: (718) 631-2700
                                        sdepaola@simdepaola.com