UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x

MICHAEL RAGLAND,

                     Plaintiff,

         -against-

CITY OF NEW YORK, BRIAN WILKENS and
JOHN or JANE DOES 1-10,

                     Defendants.
------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 2 5 2022

MEMORANDUM DECISION
AND ORDER

20 Civ. 3556 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Plaintiff Michael Ragland brings this action under 42 U.S.C. §§1981, 1983, and 1988, and New York State Law, against Defendants City of New York and Police Officer Brian Wilkens, (collectively, "Defendants"). Plaintiff's eighteen claims arise out of his April 15, 2019 arrest for fraudulent accosting pursuant to New York Penal Law § 165.30(1). (*See* Compl., ECF No. 1, ¶¶ 1, 2.) Plaintiff claims that he was unlawfully arrested because Defendants lacked probable cause. (*Id.* ¶ 2.)

    Defendants move under Federal Rule of Civil Procedure 56 for summary judgment. (*See* Defs.' Notice of Mot. for Summ. J., ECF No. 39.) Defendants' motion for summary judgment is DENIED as to Plaintiff's claims for (i) unlawful search and seizure, (ii) false arrest and false imprisonment, (iii) assault and battery, and (iv) failure to intervene. Defendants' motion for summary judgment is GRANTED as to Plaintiff's claim for (i) malicious prosecution, (ii) malicious abuse of process, (iii) excessive force, (iv) denial of right to fair trial. (v) deprivation of

1

rights and denial of equal protection, (vi) negligent hiring, training, retention and supervision, and (vii) municipal liability.[1]

## I. FACTUAL BACKGROUND

The following facts and allegations are undisputed as they are mostly reflected in video body camera footage, unless otherwise indicated. On April 15, 2019, at approximately 4 P.M., New York City Police Department ("NYPD") Officers' Dookie and Wilkins observed a minivan style cab pulling to the curb outside of 412 Eighth Avenue, roughly one block away from Pennsylvania Station and Madison Square Garden. (*See* Defs.' Rule 56.1 Statement ("Defs.' 56.1 Stmt."), ECF No. 47 at ¶¶ 3.); (*see* Decl. of John Schemitsch, ECF No. 40, Ex. C, Dookie Body Worn Camera ("BWC") Video, at 018 – 0:26 and Ex. D, Wilkins BWC Video, at 0:23 – 0:36.) While the cab was pulling to the curb, a group of people, including Plaintiff, a woman, a middle-aged man, and an elderly man, followed the cab in the street. (*Id.*)

The group waited behind the cab while a previous passenger exited the vehicle. (*Id.* at :36-50.) At the same time, Plaintiff stepped onto the curb next to the back of the cab and gestured the elderly man towards the cab. (*Id.*) The woman entered the backseat of the cab. (*Id.*) Both officers approached the cab as the middle-aged man assist the elderly man into the front passenger seat of the cab and then enter the backseat of the cab himself. (*Id.* at :51 –1:22); (Dookie BWC Video at :57 – 1:20.)

Once all the new passengers were inside the cab, Officer Wilkins asked Plaintiff, "can I talk to you for a second? Step over here [away from the cab and towards a nearby building]." (Wilkins BWC Video at 1:18 – 20.) While Officer Wilkins and Plaintiff walked away from the

---

[1] Defendants' also move for qualified immunity for Officer Wilkens with respect to Plaintiff's false arrest and malicious prosecution claims. (Defs. Mem. in Supp. of Summ. J., p. 15-16.)

curb, Officer Dookie asked the middle-aged man in the cab, "he helped get you guys a cab, right?" (Dookie BWC Video at 1:18 – :35.) The middle-aged man responded, "Yeah, and he took five bucks. He said he wanted a tip." (*Id*); (Defs.' 56.1 Stmt. at ¶ 8.)

At the same time, Officer Wilkins told Plaintiff that what Plaintiff was doing was illegal, was fraudulent accosting, and asked Plaintiff for identification and when he was last arrested. (Wilkins BWC Video at 1:21 – 58.) Officer Dookie, having finished his conversation with the cab passengers, walked towards Officer Wilkins and Plaintiff. (Dookie BWC Video at 1:30 – :43.) Officer Dookie asked Plaintiff "he gave you five bucks, right?", to which Plaintiff replied, "he gave me a tip". (*Id*.); (Wilkins BWC Video at 1:35 - :39); (Defs.' 56.1 Stmt. at ¶ 9.)[2] Officer Wilkins told Plaintiff that they would have to "…bring him in for this. This is a big thing right now that's going on." (*Id*. at ¶ 10); (Dookie BWC Video at 1:55 – 2:05); (Wilkins BWC Video at 1:57 – 2:15.) Plaintiff protested, "bring me in for what? For helping somebody to a cab?", to which Officer Wilkins responded, "I just explained it to you. This is coming down from the bosses." (*Id*.); (Dookie BWC Video at 2:02 – :10.)

Officer Wilkins told Plaintiff to put his hands behind his back and said, "we've been watching you for a couple of days." (*Id*. at 3:07 – :10); (Wilkins BWC Video at 3:11 – :32). Plaintiff asked Officer Wilkins "doing what?" Officer Wilkins responded "[the] same thing." (*Id*.); (Dookie BWC Video at 3:08 – :13.)

Officer Wilkins began handcuffing Plaintiff. (*Id*. at 3:05); (Wilkins BWC Video at 3:11 – :32); (Defs.' 56.1 Stmt. at ¶ 12.) Plaintiff told Officer Wilkins that the handcuffs were tight, and Officer Wilkins responded that he would fix them. (Dookie BWC Video at 3:29 – :32.); (Wilkins

---

[2] In his 50-H Hearing testimony, Plaintiff claims that he gave the passengers directions, walked away, they called him back, and gave him five dollars all while the police officers were inside their vehicle. (50-H Hearing Transcript, taken September 12, 2019, 11:4-12:13.)

3

BWC Video at 3:30 – :36). Officer Wilkins maneuvered the handcuffs a few times before asking the Plaintiff if the handcuffs were "good", to which Plaintiff responded that he wanted to twist his wrist around. (*Id.* at 4:40 – 50); (Dookie BWC Video at 3:45 – 4:45.) A few seconds later, Officer Wilkins again asked if the handcuffs were "good", to which Plaintiff responded "yeah."; (*Id.* at 4:40 – 4:46); (Wilkins BWC Video at 4:44 – 4:49); (Defs.' 56.1 Stmt. at ¶ 14.)

Officer Wilkins searched Plaintiff's jacket and pants pockets, and patted down both his legs. (*Id.* at ¶ 11); (Dookie BWC Video at 4:58 – 5:55.) Then, Officer Wilkins escorted Plaintiff into a police vehicle. (*Id.* at 5:55 – 6:34); (Wilkins BWC Video at 5:57– 6:44); (Defs.' 56.1 Stmt. at ¶ 15.) Wilkins again searched Plaintiff's right jacket pocket once Plaintiff was placed in the backseat of the police vehicle. (Dookie BWC Video at 6:36 – :40); (Wilkins BWC at 6:40 – :44.) Plaintiff was transported to the NYPD's Midtown South Precinct. (Defs.' 56.1 Stmt. at ¶ 16.)

Plaintiff was charged with one count of fraudulent accosting, and after several hours, was issued a desk appearance ticket ("DAT") and released. (Compl. at ¶¶ 2, 29.) On June 14, 2019, Plaintiff reported for his arraignment as directed by the DAT. (*Id.* at ¶ 32.) The New York County District Attorney's Office dismissed the charge against him. (*Id.*) Plaintiff filed this action on May 5, 2020.

Plaintiff brings the following causes of action against the City of New York and Officer Wilkins under Section 1983: unlawful search and seizure, false arrest and false imprisonment, excessive force, malicious prosecution, malicious abuse of process, denial of right to fair trial, and failure to intervene. Plaintiff also brings a deprivation of rights and denial of equal protection claim under Section 1983 and 1981. Plaintiff brings the following causes of action against the City of New York and Officer Wilkins under New York State law: unlawful search and seizure, denial of right to fair trial, false arrest and false imprisonment, assault and battery, malicious

prosecution, malicious abuse of process, deprivation of rights and denial of equal protection, and failure to intervene. Finally, Plaintiff brings the following claims against the City of New York under Section 1983 and New York State law for negligent hiring, training, retention, and supervision of the defendant officers, and municipal liability. (Compl. ¶¶ 61-180.)

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when "it 'might affect the outcome of the suit under the governing law.'" *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the non-moving party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-

movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Niagara*, 315 F.3d at 175. The Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party." *Marvel*, 310 F.3d at 286.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S UNLAWFUL SEARCH AND SEIZURE, FALSE ARREST, AND FALSE IMPRISONMENT CLAIMS IS DENIED

There is a genuine issue as to whether Defendants had probable cause to arrest Plaintiff. Therefore, summary judgment on Plaintiff's unlawful search and seizure and false arrest and false imprisonment claims is inappropriate.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Both claims require a showing that, inter alia, the defendant intentionally confined the plaintiff without consent or justification. *Pelayo v. Port Auth.*, 893 F. Supp. 2d 632, 639 (S.D.N.Y. 2012). Regardless of whether the action is brought under state law or Section 1983, the existence of probable cause to arrest constitutes sufficient justification and is thus a complete defense to liability. *Weyant*, 101 F.3d at 852 (citations omitted). If there is no arrest warrant, "the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010).

6

"An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." (*Id.*) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)). To assess whether probable cause exists, this Court "examine[s] the events leading up to the arrest and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018).

A Fourth Amendment claim fails "if there was probable cause to arrest Plaintiffs for any single offense," regardless of what crimes were charged. *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012). Whether or not probable cause exists "may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant v. Okst*, 101 F.3d 845, at 852.

Defendants contend that there was probable cause to arrest Plaintiff for the crime of fraudulent accosting. A person is guilty of fraudulent accosting "when he accosts a person in a public place with intent to defraud him of money or other property by means of a trick, swindle or confidence game". N.Y. Penal Law § 165.30(1) (McKinney 2021).

One "accosts" within the meaning of § 165.30(1) when they "…take some affirmative action to make contact with the victim for the purpose of involving that individual in the scam." *People v. Morrison*, 66 N.Y.S.3d 586 (N.Y. App. Term 2017) (quoting *People v. Tanner*, 582 N.Y.S.2d 641 (Crim.Ct., New York County 1992); *see also People v. Mitchell,* 131 N.Y.S3d 777, 777 (N.Y. App. Term 2020). Courts have found that the "accosting" element is satisfied when a person approaches someone, calls out to potential customers, or makes any effort to initiate contact with a passerby. *Tanner*, 582 N.Y.S.2d at 487 (citation omitted).

7

One's "intent" to defraud (*see* N.Y. Penal Law § 15.00 (McKinney 2021)) may be inferred from his statements, conduct and the surrounding circumstances. *Mitchell*, 131 N.Y.S3d at 777.

The New York State legislature has not defined the "trick, swindle, or confidence game" element to § 165.30(1). However, the court in *Augustine v. Reid* found probable cause to arrest for fraudulent accosting where persons falsely held themselves out to be Catholic nuns while soliciting donations on the street. 882 F. Supp. 50 (E.D.N.Y. 1995).

Defendants contend they had probable cause, or that at minimum, it was objectively reasonable for Defendants to believe they had probable cause to arrest Plaintiff for fraudulent accosting because Plaintiff "initiated the contact himself and made the request for payment himself." (Defs. Mem. in Supp. of Summ. J., p. 5-6; (Oral Argument, dated Oct. 5, 2021, Proceedings Transcript, ECF No. 49, ("OA Tr.") 3:14-22). Despite Defendants' position, there remains a genuine issue as to what basis the officers had to believe that Plaintiff initiated contact with the passengers in a manner consistent with the "accosting" element of § 165.30(1). It is unclear if the officers saw the Plaintiff approach the passengers or whether the passengers told the officers the Plaintiff approached them. While Plaintiff argues that the passengers approached him asking for directions, it is unclear why Plaintiff would continue to interact with the passengers (who were strangers to him) by walking with them towards the cab, gesturing the elderly male passenger towards the cab, and standing by the cab as they got in. (*See* Pl.'s Memo In Opp. Of Summ. J at Point I); (Compl. ¶ 23); (Wilkins BWC Video at :23 – 1:22); (Dookie BWC Video at :18 – 1:20.) While one officer stated to Plaintiff in the arrest video that "[w]e've been watching you for a couple of days…[doing the] same thing", it is unclear whether this was actually the case, what of Plaintiff's conduct the officers previously witnessed, and if that conduct constituted

8

"accosting" within the meaning of § 165.30(1). (Wilkins BWC at 3:11 – :32); (Dookie Video BWC at 3:07 – 10.)[3]

With those material questions unanswered, probable cause in this case is best suited for jury determination.[4] "Assessments of credibility and choices between conflicting versions of the events, are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A jury in this case may well find that Defendants had probable cause to arrest Plaintiff based on a totality of the circumstances. Alternatively, a jury may choose to reject Plaintiff's account that he was approached by the passengers, and instead, find that the circumstances were sufficient to reasonably infer that Plaintiff accosted the passengers consistent with § 165.30(1). In addition, with respect to the defense of qualified immunity under federal law, or governmental immunity under New York Law, a jury could conclude that the Defendants' decision to search and arrest Plaintiff under such circumstances was "objectively unreasonable". *See Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) ("Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act."); *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006).

A question of fact is therefore posed requiring trial on this issue. *See Jenkins*, 478 F.3d at 88 (noting that summary judgment would be inappropriate for New York and federal false arrest claims where the reasonableness of the officer's probable cause determination depends on material

---

[3] No depositions of either officers were taken before this opinion was rendered.

[4] Neither party substantively argues about the other elements of a fraudulent accosting, *i.e.* the intent to defraud by means of a trick. This too, however, is a jury question because it is not at all clear how Plaintiff asked the passengers for money.

9

...

issues of fact); *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (holding that "if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable ... the defendants are not entitled to summary judgment" on the issue of qualified immunity). Accordingly, since there is a genuine dispute of material fact on the issue of probable cause, Defendants' motion for summary judgment on these claims is therefore DENIED.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S ASSAULT AND BATTERY CLAIM IS DENIED

Since there is a genuine issue of material fact on the issue of probable cause, it is inappropriate to grant Defendants' motion for summary judgment on Plaintiff's assault and battery claim. Assault, under New York law, is "an intentional placing of another person in fear of imminent harmful or offensive contact[,]" while a "battery [is] an intentional wrongful physical contact with another person without consent." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006). If a police officer lacks probable cause to effect an arrest, any force used by the officer in effectuating the arrest, including the application of handcuffs, constitutes assault and battery. *See Loftin v. City of New York*, No. 15-CV-5656 (MKB), 2017 WL 3614437, at *7 (E.D.N.Y. Aug. 21, 2017) (collecting cases); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 531 (S.D.N.Y. 2013). Since, for the reasons stated above, there is a genuine dispute of material fact on the issue of probable cause and whether Plaintiff's arrest was thus lawful, summary judgment on Plaintiff's assault and battery claim is inappropriate. Defendants' motion for summary judgment on this claim is therefore DENIED.

## V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS DENIED

Since there is a genuine issue of material fact on the issue of probable cause, it is inappropriate to grant Defendants' motion for summary judgment on Plaintiff's failure to intervene claim. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). An officer may be liable under a failure to intervene theory when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citation omitted). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *See Cuellar v. Love*, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *8 (S.D.N.Y. Apr. 11, 2014). Moreover, at the summary judgment stage, a failure to intervene claim cannot proceed against an officer who is alleged to have been a direct participant in the claimed constitutional violation. *See id.*; *cf. Folk v. City of New York*, 243 F. Supp. 3d 363, 376 (E.D.N.Y. 2017) (permitting, on a Rule 12(b)(6) motion, claims to proceed against individual officers for false arrest or, in the alternative, failure to intervene, but cautioning that plaintiff "will ultimately need to refine her allegations with regard to the roles played by each of the individual Defendants"). When there exists a genuine issue of material fact as to whether there was probable cause to arrest, there also exists a genuine dispute as to whether officers' present, failed to intervene. *Garnett v. City of New York*, 2014 WL 3950904,

at *14 (S.D.N.Y. Aug. 13, 2014) (citation omitted); *Pemberton v. City of New York*, No. 18 CIV. 7908 (LGS), 2021 WL 3292209, at *4 (S.D.N.Y. Aug. 2, 2021).

Plaintiff alleged during oral argument that Office Dookie should have intervened to prevent the arrest, because the arrest was not founded upon probable cause. (OA Tr. 22:5-9)[5]. Since, for the reasons stated above, there is a genuine dispute of material fact on the issue of probable cause and the arrest videos demonstrate that Officer Dookie observed Officer Wilkins arrest Plaintiff, summary judgment on Plaintiff's failure to intervene claim is inappropriate. Defendants' motion for summary judgment on this claim is therefore DENIED.

## VI. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF REMAINING CLAIMS IS GRANTED.

### A. EXCESSIVE FORCE

Plaintiff also brings a claim against Defendants for excessive force. (Compl. ¶¶ 93 – 96.) Plaintiff alleged that he was subject to excessive force because the handcuffs placed on him were tight. (Pl.'s Memo in Opp. Of Summ. J at p. 5-8); (OA Tr. 14:23-16:5). To avoid summary judgment, Plaintiff must present sufficient evidence alleging a use of force that is "objectively sufficiently serious or harmful enough" to be actionable. *Goldberg v. City of New York*, No. 19-CV-4241 (GBD), 2021 WL 4482149, at *6 (quoting *Washpon v. Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (citation omitted). Evidence from both officers' body cameras demonstrates that the defendant officer loosened the handcuffs once Plaintiff complained they were tight. Thus, the use of force was not harmful enough, even when viewed in a light most favorable to the Plaintiff. *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248); (*see also* Wilkins BWC Video at 3:30

---

[5] While Officer Dookie is not a named defendant, this Court assumes that Plaintiff asserts this claim against him as one of the John Does 1-10. *See* OA Tr. 22:2-3; 24:24-25:1.

– 4:50); Dookie BWC video at 3:30 – 4:45.) Defendants' motion for summary judgment on this claim is therefore GRANTED.

## B. MALICIOUS PROSECUTION

Plaintiff also brings a claim against Defendants for malicious prosecution, which he fails to substantively address in his opposition brief. (Compl. at ¶¶ 97-110.) "[T]o prevail on a Section 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). A plaintiff seeking to establish a claim for malicious prosecution under New York law must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." (*Id.* at 161 (citations omitted)). Plaintiff must also demonstrate "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Olaizola v. Foley*, 797 Fed.Appx. 623, 624 (2d Cir. 2020) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215, 216 (215 2d Cir. 2000) (Plaintiff was required, as condition of post-arraignment release, to return to court on at least five occasions, before charges ultimately dropped.))

Plaintiff has failed to establish that the charges against him were "terminated in his favor"—only that "prosecutors declined to prosecute his case." (Compl. ¶ 32; *see Olaizola v. Foley*, 797 F. App'x 623, 624 (2d Cir. 2020) ("Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused.") (quotation omitted). Plaintiff has also failed to establish actual malice "…such that a reasonable jury could return a verdict for the

13

nonmoving party." *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248). Defendants' motion for summary judgment on this claim is therefore GRANTED.

## C. MALICIOUS ABUSE OF PROCESS

Plaintiff also brings a claim against Defendants for malicious abuse of process. "'In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Savino v. City of New York*, 331 F.3d 63, 69-70 (2d Cir. 2003) (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). Plaintiff fails to establish that Defendants intended harm and instead includes a conclusory and confusing assertion about "issues of fact that the officers decided to arrest Marshall only after learning of his prior criminal history. . . . " Defendants' motion for summary judgment on this claim is therefore GRANTED.

## D. ABANDONED CLAIMS

Plaintiff also brings the following claims in his complaint: (1) denial of right to fair trial; (2) deprivation of rights and denial of equal protection; (3) negligent hiring, training, retention and supervision; and (4) municipal liability. (Compl. ¶¶ 125-157, 166-180.) However, Plaintiff, in his opposition brief to Defendants' motion for summary judgment, failed to respond to arguments against Plaintiff's claims for denial of right to fair trial, and deprivation of rights and denial of equal protection. Further, during oral argument, Plaintiff conceded to the lack of evidence to establish those claims as well as his claims for negligent hiring, training, retention, and supervision, and municipal liability. (OA Tr. 21:3-15 ("We don't argue [the denial of a fair trial] in our papers because it basically terminated after his first court appearance;" "At this time, there is no such evidence [of a denial of equal protection].") 25:2-26:16 ("I would not represent that that

14

statement [clean up the streets] by itself evidences an instruction by superiors that they are to go out and make false arrests.").)

"Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way. On this basis alone, this court could grant summary judgment...." *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003) (internal citation omitted). Federal courts have found that a plaintiff abandons their claim when they fail to address it in their opposition papers to summary judgment. *Gaston v. City of New York*, 851 F.Supp.2d 780, 796 (S.D.N.Y. 2012). Given Plaintiff's failure to address his claims in his opposition briefs, or in some instances, concessions made during oral argument, this Court deems those claims abandoned. Defendants' motion for summary judgment as to Plaintiff's claims for denial of right to fair trial, deprivation of rights and denial of equal protection, negligent hiring, training, retention, and supervision, and municipal liability is therefore GRANTED.

## VII. CONCLUSION

Defendants' motion for summary judgment is DENIED as to Plaintiff's claims for (i) unlawful search and seizure, (ii) false arrest and false imprisonment, (iii) assault and battery, and (iv) failure to intervene. Defendants' motion for summary judgment is GRANTED as to Plaintiff's claims for (i) excessive force, (ii) malicious abuse of process, (iii) denial of right to fair trial, (iv) deprivation of rights and denial of equal protection, (v) negligent hiring, training, retention and supervision, (vi) municipal liability, and (vii) malicious prosecution.

The Clerk of Court is instructed to close Defendants' motion (ECF No. 39).

Dated: New York, New York
**FEB 2 5 2022**

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

16